**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: April 19 2017

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 13-34137 |
| | ) | |
| Robin L. Horvath, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 15-3041 |
| | ) | |
| Daniel M. McDermott, | ) | Hon. Mary Ann Whipple |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Robin L. Horvath, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION

This adversary proceeding is before the court for decision after trial on the "Complaint to Revoke and Deny Discharge" filed by Plaintiff, the United States Trustee ("the UST"). Defendant, proceeding *pro se*, is the debtor in the underlying Chapter 7 bankruptcy case. In count one of the complaint the UST seeks an order revoking Debtor's Chapter 7 discharge under 11 U.S.C. § 727(d)(3) and (a)(6)(A).[1] The issue is whether Defendant's conduct in response to an order of this court to produce documents justifies revocation

---

[1] Count two of the complaint seeks revocation of Debtor's discharge under 11 U.S.C. § 727(d)(1). At trial, counsel for the UST withdrew count two and proceeded only under § 727(d)(3).

of his discharge.

The district court has jurisdiction over Defendant's underlying Chapter 7 bankruptcy case as a case under Title 11 and over all proceedings arising in or related to that case, including this adversary proceeding. 28 U.S.C. § 1334. The Chapter 7 case and all proceedings arising in or related to that case, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. § 157(a) and General Order No. 2012-07 of the United States District Court for the Northern District of Ohio. This adversary proceeding is a core proceeding in which this court can make a final determination because it involves a debtor's right to a discharge. 28 U.S.C. § 157(b)(1) and (2)(J).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this memorandum of decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendant is entitled to judgment in his favor on the complaint.

## FINDINGS OF FACT

On October 7, 2013, the underlying involuntary Chapter 7 bankruptcy case was commenced against Defendant by petitioning creditors, an accounting firm and two law firms trying to collect professional fees from him. The principals of the two law firm petitioning creditors are attorneys Thomas Matuszak and Troy Moore. For years before commencement of the involuntary Chapter 7 case, Defendant had been a party to extensive litigation in the Lucas County, Ohio Court of Common Pleas ("State Court") involving a number of cases and claims against a number of parties, all stemming from his fifty percent ownership of Tony Packo's Inc., Tony Packo Food Company, LLC, Packo Properties, LLC, and Magyar Holdings, LLC ("the Packo Companies"), disagreements amongst the owners of the Packo Companies, and his partial personal guaranty of the companies' debts owed to Fifth Third Bank. The Packo Companies and their longtime core family restaurant and food business focusing on Hungarian specialties ended up in a receivership proceeding in State Court. The petitioning creditor law firms, through Matuszak and Moore, represented Defendant in the State Court receivership and other proceedings.

This court entered an order for relief against Defendant in the Chapter 7 case and, on February 28, 2014, he filed his bankruptcy schedules. Assets listed on Defendant's Schedule B-Personal Property[2]

---

[2] The designation and format of the required Official Forms comprising a debtor's schedules have changed since Defendant filed his schedules.

2

include, among other things, a fifty percent ownership interest in Tony Packo's, Inc. ("TPI") and Packo Properties and the "Tony Packo's Recipe 'Ingredient' List." He pointedly did not schedule the recipes themselves. [UST Ex. C, p. 2]. According to Defendant, it was his understanding at that time that the Tony Packo recipes had been sold by the receiver of TPI in the State Court receivership proceeding. [UST Ex. J, p. 77].

Following a January 13, 2015, evidentiary hearing on a motion to approve compromise filed by the Chapter 7 Trustee ("Trustee"), ownership of the recipes became a hotly contested issue. According to Defendant, following that hearing and subsequent meetings with Matuszak and Moore, it became his new understanding that the recipes were not properly conveyed to the buyer in the receivership proceeding and that, as a result, either he or his late mother's trust owned the rights to recipes for Tony Packo's hot dog sauce and chili soup. [UST Ex. J, pp. 79-80, 99/422]. Defendant's mother, Nancy Packo Horvath, died in April 2003. Defendant is the sole beneficiary under her will and successor trustee and beneficiary under her trust (the "NPH Trust"). [UST Ex. J, pp. 31, 44/422]. According to Defendant, he relies on the affidavit of Nancy Packo Horvath ("NPH Affidavit"), a Term Sheet produced in mediation of state court litigation in 2002 between family members who were co-owners of TPI, and a License Agreement relating to the hot dog sauce and chili soup recipes, as showing that his mother owned the recipes. [*Id.* at pp. 58, 63-64/422; UST Ex. M, pp. 189-91, 209/324]. He relies on a provision of the License Agreement as support for his claim that certain of the recipes became assets of his mother's probate estate. [UST Ex. J, pp. 86-87].

On February 10, 2015, Defendant filed an amended Schedule B-Personal Property. In addition to "potential claims" against certain parties, amended Schedule B adds "[a]ssets from the Estate of Nancy Packo Horvath - including, but not limited to, the License Agreement Dated October 29, 2002 between Nancy Packo Horvath & Tony Packo's Inc. and any rights arising from that agreement." [UST Ex. D, p. 4].

On March 10, 2015, the Trustee filed a motion for an order directing Defendant to appear for questioning at a Bankruptcy Rule 2004 examination and to produce certain documents. [UST Ex. E]. On March 27, 2015, the court granted the Trustee's motion and ordered Defendant to produce to Trustee's counsel on or before April 6, 2015, the following documents within his custody or control:

> (1) Debtor's last two filed tax returns as required by 11 U.S.C. § 521(e); (2) any and all documents supporting the assets identified in the amended schedules filed on February 10, 2015 at Doc. # 119, including The Nancy Pack[o] Horvath Living Trust dated March 22, 2002, and any amendments, changes or modifications, any exhibits or funding documents relating thereto and a copy of the certificate of determination of final estate tax liability filed with the probate court on May 6, 2004; and (3) and any and all documents supporting Debtor's signed Affidavit pertaining to his assets filed on February 25, 2015 at Doc. # 125.

3

[UST Ex. H, p. 3]. The order was served on Defendant by first class mail as well as on his then bankruptcy attorney through the court's CM/ECF electronic mail system. [*See* Case No. 13-34137, Doc. # 155].[3]

Before entry of the court's order, the Trustee had filed a motion in the Lucas County, Ohio, Probate Court, asking for a copy of the Nancy Packo Horvath final estate tax return ("NPH estate tax return"). [UST Ex. J, p. 37/422; *see* Adv. No. 15-3058, Doc. # 86, p. 3]. The motion was served on Defendant's then bankruptcy counsel and separate counsel for the NPH Estate. [UST Ex. J, p. 37-38/422]. That motion was granted by the Probate Court without objection and Trustee's counsel obtained the final and only NPH estate tax return before the Rule 2004 examination. [*Id.*].

On April 6, 2015, Defendant produced to Trustee's counsel thirty-one documents. In addition to documents relating to the "potential claims" included on amended Schedule B, Defendant produced the NPH Trust, NPH Will, NPH Affidavit, License Agreement, and the Term Sheet. At the Rule 2004 examination that took place on April 10, 2015, Defendant stated that he had twenty-six half-size banker boxes of files that he had not gone through, but that all of those files relate to litigation since 2010 and not to his mother's estate. [*Id.* at 70-72/422]. After examining Defendant regarding the potential claims included on amended Schedule B, as well as Debtor's interest in the recipes, the Trustee asked for documents in addition to what had been produced and emphasized that the court's order "says any and all documents relating to, you know, anything identified in the schedules." [*Id.* at 219-20/422]. Defendant then agreed to produce any additional documents, as discussed at the Rule 2004 examination, by April 24, 2015. [*Id.* at 383-87/422].

On April 25, 2015, Defendant produced an additional forty documents to Trustee's counsel and further supplemented his document production on April 30, 2015, with additional documents. [UST Ex. Q, pp. 3-6; Ex. M, p. 10/324]. Apparently none of those documents were documents in Debtor's NPH Trust files. Instead, what was labeled as Exhibit 40 in his document production is one page that states as follows:

NANCY PACKO HORVATH TRUST FILES AND TAX RETURNS

PLEASE MAKE A FORMAL REQUEST THROUGH THE COURT FOR ANY INFORMATION
PERTAINING TO THE NANCY PACKO HORVATH TRUST

THE REQUESTED CURRENT 2004 HEARING(S)
DOCUMENTATION IS FOR THE DEBTOR ROBIN L. HORVATH,

---

[3] The court takes judicial notice of the contents of its case dockets. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

INDIVIDUALLY, AND NOT FOR THE NANCY PACKO
HORVATH TRUST.

[UST Ex. Q, p. 3/6; Ex. R].

Before the April 10 Rule 2004 examination, Defendant had engaged attorney Marvin Keller as counsel to represent the NPH Trust. [*See* Ex. N]. Keller had represented Nancy Packo Horvath before her death in 2003 regarding estate planning, including preparation of the NPH Will, which he described as a pour-over will, and the NPH Trust. At some point after her death, Defendant had obtained the trust files from Keller but returned all of the files to Keller before the April Rule 2004 examination. [*See* UST Ex. M, p. 94/324].

Defendant, together with Troy Moore, met with Keller. According to Keller, discussion ensued regarding the recipes not having been transferred in the receivership sale of assets and the procedure in Probate Court to effect the transfer of them to the NPH Trust pursuant to the NPH Will. On May 1, 2015, Keller filed in Probate Court on behalf of Horvath, as executor of his mother's estate, a Schedule of Assets stating that the recipes, all other intellectual property used in the operation of TPI's business, and all of the recipes referenced in the NPH Affidavit were the only assets of the NPH Estate. [UST Ex. T, p. 8/10]. On May 4, 2015, Horvath, as executor of the NPH Estate, executed an Assignment of Interest in Recipes and Intellectual Property to the NPH Trust. [*Id.* at 5/10].

By letter dated May 6, 2015, in response to Keller's request for clarification of the meaning of the phrase "any exhibits or funding documents" relating to the NPH Trust that was included in her request for document production and in the court's order requiring the requested production, Trustee's counsel stated that she is requesting "any and all documents pertaining to [the NPH Trust] assets (including but not limited to documents reflecting transfers in or out of the Trust at any time), the last three years of filed tax returns, K-1's issued to Mr. Horvath, a current inventory of its assets, and similar information. That is what is meant by the 'funding documents' related thereto." [Def. Ex. 6, p. 1]. On that same date, the Trustee issued a subpoena, which was served on Keller and required the NPH Trust to produce specified documents by May 27, 2015. [UST Ex. S].

Keller timely responded on behalf of the NPH Trust and produced the following documents: Assignment of Interest in Recipes and Intellectual Property, Schedule G from the Ohio Estate Tax Return, NPH Trust income tax returns for the years 2003 and 2004, IRS Schedule K-1's issued to Defendant by the NPH Trust for years 2003 and 2004, Inventory and Appraisal filed in Probate Court on May 1, 2015, letter dated March 5, 2005 from Keller to attorney Thomas Killam requesting that stock owned by the NPH Trust

5

be reissued in Debtor's name. [UST Ex. T]. In addition to the documents produced, Keller responded by stating that there were no amendments, changes or modifications to the NPH Trust, all assets of the NPH Trust listed on Schedule G of the estate tax return were distributed to Defendant prior to December 31, 2003, and he is aware of no other transfers other than the recent transfer from the NPH Estate. [*Id.* at 1/10]. He further stated that there are no bank statements or accounts belonging to the Trust for the period requested, that the income tax returns for the NPH Trust produced are the only tax returns filed, and there were no Schedule K-1's issued to Defendant for years 2010 through 2014. [*Id.* at 2/10]. The Trustee testified that only after receiving the documents produced by Keller on subpoena did she receive all of the documents required to be produced in the court's March 27, 2015, order.

Defendant was granted a discharge in the underlying Chapter 7 case on May 14, 2014. The UST on May 6, 2015, timely filed his complaint to revoke Defendant's discharge. *See* 11 U.S.C. § 727(e).

## LAW AND ANALYSIS

Denial or revocation of a debtor's discharge are extraordinary remedies that run contrary to the Bankruptcy Code's "fresh start" policy. *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 433 (4th Cir. 2008); *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 426–27 (Bankr. N.D. Ohio 2004). The statutory exceptions to discharge are thus to be strictly construed in favor of the debtor. *United States v. Storey*, 640 F. 3d 739, 743 (6th Cir. 2011); *Jordan*, 521 F.3d at 433. As the party seeking revocation, the UST bears the burden of proof by a preponderance of the evidence. *McDermott v. Davis (In re Davis)*, 538 B.R. 368, 384 (Bankr. S.D. Ohio 2015); *Sayre,* 321 B.R. at 428; *see* Fed. R. Bankr. P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.").

The UST seeks to revoke Defendant's discharge under 11 U.S.C. § 727(d)(3) and § 727(a)(6)(A). Section 727(d)(3) provides that the court shall revoke a debtor's Chapter 7 discharge if the debtor committed an act specified in § 727(a)(6). 11 U.S.C. § 727(d)(3). Section 727(a)(6)(A) in turn provides that a debtor who "has refused . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify" must be denied a discharge in bankruptcy. 11 U.S.C. § 727(a)(6)(A). The order at issue is this court's March 27, 2015, order requiring Defendant to produce documents. [UST Ex. H]. Generally speaking, refusal to timely produce documents in an orderly, coherent fashion in response to a court order under Rule 2004 may violate § 727(a)(6)(A) and result in denial (or revocation under § 727(d)(3) as the case may be) of a debtor's discharge. *E.g.*, *Concannon v. Costantini (In re Costantini)*, 201 B.R. 312, 316 (Bankr. M.D. Fla. 1996).

The Sixth Circuit Court of Appeals has not addressed the showing necessary to deny or revoke a

6

debtor's discharge for refusing to obey a lawful order of the court. Other courts disagree about the showing necessary to deny or revoke a debtor's discharge on that basis. *Helbling v. Payne (In re Payne)*, Case No. 13-10568, 2015 Bankr. LEXIS 655, *5, 2015 WL 1000166, *2 (Bankr. N.D. Ohio March 3, 2015). Notably, the statute uses the word "refused" and not just "failed," which is used elsewhere in § 727(a). *Jordan*, 521 F.3d at 433 (quoting *LaBarge v. Ireland (In re Ireland)*, 325 B.R. 836, 838 (Bankr. E.D. Mo. 2005)); *Yoppolo v. Walter (In re Walter)*, 265 B.R. 753, 758 (Bankr. N.D. Ohio 2001).

Some courts find that the term "refused" as used in § 727(a)(6)(A) requires a showing that the debtor's lack of compliance with the court's order was willful and intentional. *See, e.g., Jordan*, 521 F.3d at 433; *Standiferd v. United States Tr.*, 641 F.3d 1209, 1212 (10th Cir. 2011); *The Cadle Co. v. Parks-Matos (In re Matos)*, 267 Fed. Appx. 884, 886 (11th Cir. 2008); *Mason v. Meador (In re Meador)*, Adv. No. 08-6033, 2008 Bankr. LEXIS 4567, *8, 2008 WL 2812157, *3 (Bankr. N.D. Ohio 2008). Willful non-compliance cannot be found, however, where it would not be apparent to the typical debtor that the complained of conduct was a violation of the court's order. *Jordan*, 521 F.3d at 435.

By contrast, other courts find that the term "refused" as used in § 727(a)(6)(A) requires only the same showing necessary for determining whether to hold a party in civil contempt, thus negating the requirement that noncompliance be willful and intentional. *See, e.g., Parker v. Thompson (In re Thompson)*, 383 B.R. 407, 410 (Bankr. N.D. Ohio 2007); *Walter*, 265 B.R. at 758; *Hazlett v. Gorshe (In re Gorshe)*, 269 B.R. 744, 746 (Bankr. S.D. Ohio 2001). *Cf. In re Jacques,* 761 F.2d 302, 306 (6th Cir. 1985)("[S]ince the contempt proceeding was civil and remedial in nature, Jacques' intent in disobeying the order to appear is irrelevant to the validity of the contempt finding."). *But cf. Kelvin v. Avon Printing Co. (In re Kelvin Publishing)*, Case No. 94-1999, 72 F.3d 129 (Table), 1995 U.S. App. LEXIS 36993, *7, 1995 WL 734481 (6th Cir. Dec. 11, 1995) ("There can be no sanction for contempt without sufficiently willful violation of a clear judicial command."). Those courts require only that a plaintiff demonstrate that (1) the debtor had knowledge of the order that he is said to have violated, (2) the debtor failed to comply with the order, and (3) the order was clear, specific and definite. *See, e.g. Thompson*, 383 B.R. at 410 (also noting that impossibility or inability to comply with an order can be a defense to contempt).

This court need not decide here precisely which formulation of the standard applies, since under either standard, regardless of the level of intent, common elements that must be shown by the party seeking revocation of a debtor's discharge for violation of a court order are those that are required to hold a party in civil contempt. While the UST has proven the first element, that Defendant had knowledge of the court's March 27, 2015 order, he has not met his burden as to the second and third elements.

As to the first element, the court's March 27, 2015, order requiring Defendant to produce certain documents to the Trustee's counsel on or before April 6, 2015, was served on both Defendant and Defendant's bankruptcy attorney. There is no dispute that Defendant received and had knowledge of the court's order, and Defendant acknowledged as much at his Rule 2004 examination. Nor does Defendant contest that the order is a "lawful order of the court" within the meaning of § 727(a)(6)(A).

As to the second and third elements, the UST contends that Defendant did not comply with that portion of the court's March 27, 2015, order requiring him to produce by April 6, 2015, "any and all documents supporting the assets identified in the amended schedules filed on February 10, 2015 at Doc. # 119, including The Nancy Pack[o] Horvath Living Trust dated March 22, 2002, and any amendments, changes or modifications, any exhibits or funding documents relating thereto and a copy of the certificate of determination of final estate tax liability filed with the probate court on May 6, 2004." [UST Ex. H, p. 3]. Specifically, the UST contends that Defendant was required to produce any and all documents relating to the NPH Trust but produced only the Trust document itself by the April 6, 2015 deadline. The UST also directs the court to Defendant's response to the Trustee's request of him at the first Rule 2004 examination to review additional documents and to produce, among other things, any and all documents relating to the NPH Trust. Although he produced a number of additional exhibits before the continued Rule 2004 examination, he produced no exhibits relating to the NPH Trust and, instead, stated that the Trustee should make a formal request for such documents through the court. According to the UST, Defendant's non-compliance with the court's order is shown by Defendant's blunt response and the fact that the Trustee had to issue a subpoena to the NPH Trust in order to obtain the documents she had sought from Defendant. For the reasons that follow, however, the court finds that its March 27 order was not clear and definite and further finds that Defendant satisfactorily complied with a reasonable interpretation of the order.

The court's March 27, 2015, order required Defendant to produce "any and all documents supporting the assets identified" in his amended Schedule B, including the NPH Trust and "any exhibits or funding documents relating thereto," plus the final NPH Estate tax return filed with the Probate Court on May 6, 2004. [UST Ex. H, p. 3]. The only additional documents produced by the NPH Estate through Keller that were in existence on April 6, 2015, were NPH Trust income tax returns for years 2003 and 2004, Schedule K-1's issued to Defendant for those same years, a letter dated March 5, 2005, requesting that stock owned by the NPH Trust be reissued in Defendant's name, and Schedule G from the Ohio NPH Estate tax return. While it is true that these are documents "relating to" the NPH Trust, except for Schedule G of the estate tax return, they are not necessarily documents "supporting the assets identified" in Defendant's amended

8

Schedule B or even the narrower category of "exhibits or funding documents relating" to the NPH Trust, hence Attorney Keller's own request for clarification on that point on behalf of the NPH Trust. And there lies the ambiguity. The court believes a reasonable interpretation of the March 27 order is that Defendant was required to produce any and all documents "supporting" or demonstrating his interest in the assets identified on his amended Schedule B, not any and all documents relating to the NPH Trust.

Defendant's amended Schedule B included assets from the NPH Estate, including the License Agreement and any rights arising from that agreement, which, according to Defendant, include rights relating to the recipes. By the April 6, 2015, deadline in the court's order, Defendant had produced to Trustee's counsel not only the NPH Trust, but also the NPH Will, which was a pour-over will, the NPH Affidavit, the License Agreement, and the Term Sheet, which are the documents that he relies upon as supporting his interest in the amended Schedule B assets relating to his mother's probate estate. While Defendant would also be required to produce funding documents to the extent that there are assets in the NPH Trust, there have been no assets in the NPH Trust since 2005 and, thus, a reasonable interpretation of the court's order is that no funding documents were required to be produced. The Probate Court documents and Assignment of Interest in Recipes and Intellectual Property produced by Keller did not exist until May 2015. And the court does not understand, and the UST did not explain, the significance of the 2003 and 2004 income tax returns and Schedule K-1s to the assets on Defendant's amended Schedule B.

Although Defendant did not produce the NPH final estate tax return, the Trustee had already filed a motion in Probate Court requesting a copy of the tax return before this court entered its March 27, 2015, order requiring Defendant's production of documents. And the motion was granted by the Probate Court without any objection from Defendant. Under these circumstances, the court finds that Defendant allowing the Trustee to obtain the tax return through the Probate Court without objecting sufficiently complies with his obligations under the March 27 court order.

The bankruptcy judge who issues an order is usually in the best position to interpret the order and to evaluate whether the circumstances surrounding compliance or non-compliance with it merit in the exercise of its discretion a denial or revocation of discharge. *Patriot Group LLC v. Fustolo (In re Fustolo)*, 563 B.R. 85, 110 (Bankr. D. Mass. 2017)(citing *Commerce Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134, 138 (1st Cir. 1992), abrogated on other grounds by *Field v. Mans*, 516 U.S. 59 (1995)); *Walter*, 265 B.R. at 758 ("For purposes of § 727(a)(6)(A), a bankruptcy court, in determining whether a debtor has 'refused' to obey a court order, is given a great deal of discretion," citing *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 755 (9th Cir. 1985)). For all of the foregoing reasons, the

court finds that the UST did not meet his burden of proving that Defendant did not comply with the court's March 27, 2015, order to produce documents supporting the assets identified in his amended Schedule B and, thus, did not meet his burden of proving circumstances requiring revocation of Debtor's discharge in the court's view.

The court will enter a separate judgment in accordance with this Memorandum of Decision.

###